

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 JUL -2 PM 1: 52

LORETTA G. WHYTE
CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SHAWANDA RENFROE,** | : | |
| **et. al.,** | : | **CIVIL ACTION** |
| | : | **No. 03-3613** |
| **Plaintiffs** | : | |
| | : | |
| **VERSUS** | : | **SECTION "K"** |
| | : | |
| **HOUSING AUTHORITY OF NEW** | : | |
| **ORLEANS, et. al.,** | : | **MAG. 1** |
| | : | |
| **Defendants** | : | |
| | : | |

! : : : : : : : : : : : : : : : : : : : :::::

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT INJUNCTIVE AND OTHER EQUITABLE RELIEF, AND DAMAGES

Now come plaintiffs, by and through undersigned counsel, and for their Amended Complaint

state as follows:

Fee_____
Process____
X  Dktd____
___ CtRmDep____
___ Doc. No.____

## INTRODUCTORY STATEMENT

1. This is an action pursuant to 42 U.S.C. §1983 by displaced public housing tenants of the Housing Authority of New Orleans ("HANO").  Plaintiffs seek to enforce their rights under the federal Uniform Relocation Act and the United States Housing Act of 1937 to comparable replacement housing in the community following their forced relocation due to the construction of federally assisted projects.  Those plaintiffs who have been permanently displaced seek to require the defendant public housing authority to pay them up to $125 per month for their increased housing costs, for a maximum of 42 months.  Those plaintiffs who have been temporarily displaced seek payment of their reasonable and actual housing and relocation costs resulting from their displacement.

## JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. §§1331, 1343(a)(3) and 1337.  This case arises under federal law, including the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("URA"), 42 U.S.C. § 4601 *et seq*., the United States Housing Act of 1937, 42 U.S.C. §1437 *et. seq* ., and 42 U.S.C. § 1983.

3. Declaratory and injunctive relief is authorized under:

(a) 28 U.S.C. §2201 and § 2202 which authorize the Court to grant declaratory relief and such other relief as the Court deems proper;

(b) 42 U.S.C. §1983 which provides redress for the deprivation under color of state law of any right, privilege or immunity secured to persons by the Constitution and laws of the United States.

## PARTIES

1

4. Plaintiffs are all citizens of the United States who, as a result of Hope VI revitalization and/or federally assisted modernization programs, were involuntarily displaced from conventional public housing units owned by Defendant Housing Authority of New Orleans and managed by Defendant Carrie Dobbins, Receiver.

5. Upon being involuntarily displaced from Desire, St. Thomas, Florida or C.M. Peete developments, the following plaintiffs moved to section 8 voucher housing in Orleans Parish and have received from defendant HANO some but not all of the compensation due them under the Uniform Relocation Act for increased housing costs.[1] Sabrina Ackers, Sherrill Acklin, Tanita Akmin, Cindy Mae Alexander, Keyon Alexander, Mary Anderson, Nicole Arnold, Carolyn Atkins, Georgia Badon, Lealer Faulk Badon, Nathalie Baldwin, Lenora Bankston, Gwendolyn Bannister, Yoland Barra, Elizabeth J. Batiste, Leona Battie, Leroy Beasley, Janice Bell, Willie Mae Blatcher, Juanita L. Boudreaux, Nicole Braud, Sidrikia Bridgewater, Veronica Brimmer, Emma Leavy Brown, Hattie Brown, Tonya Brown, Tiffani Brumfield, Collette Chartian, Cynthia Clark, Sylvia Corner, Helen Coleman, Delores Curtis, Shirley Cyprian, Theda Daniel, Sheryl Davis, Lisha Delmore, Raquel M. Diaz, Gladys C. Dorest, Harriet Kate Duncan, Clara Duplessis, Barbara J. Everage, Renard Flagge, Barbara Foster, Cynthia M. Gillum, Latissa Glover, Treneen Gordon, Mary Gross, Leola Alexander Hall, Janice Hamilton, Raynell Harper, Katie Harris, Trenell Harris, Barbara Ann Haynes, Esther Haynes, Penny Taylor Henry, Doris Williams Horne, Charmine Houston, Carol A. Howard, Rosalene Isaac, Barbara Jackson, Barbara L. Jackson, Joyce Ann Jackson, Leola Sanders Jackson, Mildred Jackson, Trina Jackson, Pamela Jefferson, Chelsey Johnson, Evelyn Jenkins

---

[1] As used herein, "housing costs" include rent or mortgage payments and gas, electric and water bills

2

Johnson, James Johnson, Shannon M. Johnson, Trina Jackson, Erica Jolly, Letitia C. Jolly, Loletha M. Jones, Nicole Jones, Octavia Christy Jones, Oz Jones, Marion Jordan, Melba Badon Keith, Amy King, Sonya C. Knight, Marilyn LaCour, Eniel Larks, Joycelyn Lavigne, Gwendolyn E. Layman, Troylynn Lawrence, Lubertha Lee, Sandra Lee, Florida Marie Leggins, Barbara Leonard, Elaine Letterman, Everlena Lewis, Mary Ann Lewis, Dwayne Lewis, April Mack, Annie J. Magee, Jacqueline Marshall, Jacqueline Ann Marshall, Clarice Martin, Quwanda Martin[2], Kathleen McCaskill, Hope McElveen, Betty McElveen, Michelle Manning, Jacqueline Marshall, Barbara Martin, Lonnie McBride, Faye Mcmillian, Andre Mims, Glorideen Miller, Joan Mitchell, Germaine Monroe, Schwanna Morris, Carla Nelson, Yvette Neveaux, Norena Newsome, Evella Pierre, Lenora Polk, Joann Alexis Pugh, Donshala Quinn, Katherine Raymond, Irma Ricardo, Pauline Richard, Estella Richardson, Valerie Riles, Tammy Riley, Barbara Taylor Robertson, Rosalie Robinson, Thelma Robinson, Shelita Rodrigues, Delores Rolland, Glenda Rowell, Jessie Burns Scott, Cicily Segura, Debra Simon, Charlene Smith, Debra E. Smith, Debra Marie Smith, Florine Smith, Jacqueline Smith, Leotha Smith, Shelanda Smith, Virginia Smith, Cynthia Solomon, Patricia Sorina, Devonzel Sterling, Briggie Stewart, Carol Sims Stewart, Mary Stewart, Viola Stewart, Alicia Sylvester, Catherine Taylor, Janita Taylor, Vanessa Thedford, Delores Thomas, Clothilde Tillie, Berleather Toler, Tanika Turner, Katrina Tyler, Valerie Vanorman, Michelle Ventry, Latangel Viltz, Wendy Wallace, Zetroia Ward, Agnes Washington, Deotis Washington, Yvette Washington, Barbara Waters, Melvaline Waters, Rosalind Watts, Deshanna Weaver, Patricia Weaver, Elaine West, Estelle Wharton, Annie White, Gloria White, Bessie Williams, Cynthia Williams, Cyntrell Dixon Williams,

---

[2]Quwanda Martin's family would have received payment in this category but for her mother's death. She is named as a surviving tenant entitled to payments under the URA.

Glen Marie Williams, Idelle Williams, Mary Williams, Ruth Barnes Wilson, Verna Williams, Patricia Young, Robin Young, Sondeltia Young, Shirley Young and Theresa Young. Jacqueline Bently Lott, Marian Hagans and Debra Williams Moses also moved to section 8 voucher housing in Orleans Parish and were entitled to receive from defendant HANO compensation due them under the aforesaid settlement agreement and the Uniform Relocation Act for increased housing costs but HANO has improperly failed to pay them because they paid only for electricity, not gas. Upon being involuntarily displaced, the following plaintiffs moved to Section 8 housing located outside Orleans Parish, either directly after being involuntarily displaced or following a period of tenancy in Orleans Parish, and have received none of the compensation due them from defendant HANO under the Uniform Relocation Act for their time outside Orleans Parish: Felicia Badon, Mona Blunte, Dianne Carter, Karrie Curtis, Geraldine Dixon, Charlene Green, Jynika Jacques, Catrice Johnson, Gaynell Jones (remaining tenant family member of Flora Mae Ventry), Judy Jones, Delores Thomas Matthews, Javonda Morgan, Shawanda Renfroe, Regina Singleton, Dorothy Valry Singleton, Kawanda Turner, Wendy Wallace, Audrey Walton, Charlotte Winn, Emelda Woods and Theresa Young. Upon being involuntarily displaced from the Fischer Development, plaintiffs Dione Davis, Tanya Glover, Robin Faggin, Tasha Landry, Antoinette Williams and Dorothy Wright moved from Fischer development to section 8 housing in or outside of Orleans Parish and have received from defendant HANO none of the compensation due them under the Uniform Relocation Act. Upon being involuntarily displaced from Desire, St. Thomas, Florida or C.J. Peete developments, the following plaintiffs moved to scattered site public housing in Orleans Parish and have received or will receive by agreement with HANO some but not all of the compensation due them under the Uniform Relocation Act from defendant HANO: Gaynell Adams, Lynettte Carter Byrd, Trenell

4

Christmas, Patricia Cook, Marlene Demourelle, Zequilla Dunn, Jeanette Dunn, Cynthia Floyd, Jamelle Forcel, Emelda Green, Mary Green, Pinkey Guy, Christine Johnson, Angenella Johnson, Evelyn Kelly Jones, Catherine Magee, Linda Moliere, Cynthia Morris, Theresa Morris, Jean Mutin, Dorothy Peterson, Trane Powell, Patricia Price, Debra Railey, Byron Red, Dorothy Richardson, Brenda Scio, Arnold Seymour, Jr. (remaining tenant family member of Brenda Seymour), Zinnitra Stevenson, Ella Tobias, Nella Weary and Yvonne White. Upon being involuntarily displaced from one of the above-referenced developments or at some time thereafter, the following plaintiffs moved to private housing either directly from a covered development or following a period as a Section 8 voucher tenant or scattered site tenant had have received from defendant HANO none of the compensation due them under the Uniform Relocation Act for their time in private housing: Gaynell Adams, Dorothy Beal, Barbara Bell, Viola Corey, Shawinda Cowart, Felicia Jackson, Crystal Jordan, Rubbie Kennell, Nadine Martin, Jacqueline Montana, Jessie Scott, Cynthia Smith, Donna Smith, Kwanda Turner, Daynel Ward and Ophelia Warrick. Plaintiff Barbara Jackson also moved to private housing and has not received compensation due her under the Uniform Relocation Act for her utility costs while in private housing.

6. Defendant, Housing Authority of New Orleans, is a public corporation created under the Louisiana Housing Authorities Law, L.S.A.-R.S. 40:381 et. seq. and governed by the United States Housing Act of 1937, 42 U.S.C. § 1437 et. seq. and regulations promulgated thereunder.

7. Defendant, Carrie Dobbins, is the Receiver of HANO, appointed by the federal Department of Housing and Urban Development, whose duties include, *inter alia,* making such payments to tenants permanently displaced because of a federally funded project as may be necessary to enable such person to obtain a comparable replacement dwelling for up to 42 months, and also

5

making payments of all reasonable out-of-pocket expenses for those temporarily relocated due to a federally funded project.

8. At all times pertinent hereto the defendants acted in their official capacities and under color of state law.

## STATUTORY AND REGULATORY FRAMEWORK

9. With respect to all permanently displaced tenants, this action arises under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, as amended, *et seq.*, also known as the Uniform Relocation Act or "URA." 42 U.S.C. §4621(b) states the following as Congressional policy: "The primary purpose of this subchapter is to ensure that [persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance] shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons." As to temporarily displaced tenants, this action arises under the United States Housing Act of 1937, 42 U.S.C. §1437 *et. seq* .

10. 42 U.S.C. §4624(a) of the URA provides that the "head of a displacing agency shall make payment to or for any displaced person ...[which] shall consist of the amount necessary to enable such person to lease or rent for a period not to exceed 42 months, a comparable replacement dwelling, but not to exceed $5,250." This statute also provides that this payment may be made in periodic installments.[3]

---

[3] In addition, a replacement dwelling must meet HUD Housing Quality Standards, be "functionally equivalent" to the displaced dwelling, have the appropriate number of bedrooms for the displaced household, and be located in an area that is generally not less desirable than the location from which they are relocated. If these criteria can not be met, Section 206 of the URA (Last Resort Housing) permits the use of project funds for payments in excess of $5,250.

11. Subsection (b) of this statute further provides that displaced tenants "may elect to apply such payment to a down payment on, and other incidental expenses pursuant to, the purchase of a decent, safe and sanitary replacement dwelling."

12. "Comparable replacement dwelling" as used in this statute is defined in relevant part as "within the financial means of the displaced person." 49 C.F.R. § 24.2. This regulation further defines "within the financial means of the displaced person" as follows:

> 49 C.F.R. § 24.2(8)
> **\*\*\*\*\*\*\*\*\***
>
> (ii) A replacement dwelling rented by an eligible displaced person is considered to be within his or her financial means if, after receiving rental assistance under this part, the person's monthly rent and **estimated average monthly utility costs for the replacement dwelling** do not exceed the person's base monthly rental for the displacement dwelling as described at § 24.402(b)(2)(emphasis added).

13. 49 C.F.R. § 24.402(b)(2) in turn defines "base monthly rental for displacement dwelling" as follows:

> (2) The base monthly rental for the displacement dwelling is the lesser of:
> (i) The average monthly cost for rent and utilities at the displacement dwelling for a reasonable period prior to displacement, as determined by the Agency...For a tenant who paid little or no rent for the displacement dwelling, use the fair market rent, unless its use would result in a hardship because of the person's income or other circumstances; or
> (ii) Thirty (30) percent of the person's average gross household income; or
> (iii) The total of the amounts designated for shelter and utilities if receiving a welfare assistance payment from a program that designates the amounts for shelter and utilities.

14. The "average monthly cost for rent and utilities" for the displacement dwelling in the respective public housing development of each plaintiff was equal to "thirty (30) percent of the person's average gross household income." 49 C.F.R. § 24.402(b)(2). These are thus the base

monthly rentals for their respective displacement dwellings.

15. With respect to public housing tenants temporarily displaced as a result of demolition of their units, 24 C. F. R. § 970.5(f) provides that:

> Residential tenants who will not be required to move permanently, but who must relocate temporarily...shall be provided: (1) Reimbursement for all reasonable out-of-pocket expenses incurred in connection with the temporary relocation, including the cost of moving to and from the temporary housing, any increase in monthly rent/utility costs, and the costs, and the cost of reinstalling telephone and cable TV service.

16. In accordance with is regulation, defendant HANO's own policies have provided at all times relevant hereto that HANO will pay for all costs for tenants temporarily relocated from public housing due to demolition.

17. With respect to tenants temporarily displaced as a result of Public Housing Modernization, 24 C.F.R. § 968.108(b) also requires Public Housing Authorities to pay for "all reasonable out-of-pocket expenses incurred in connection with the temporary relocation." With respect to tenants permanently displaced as a result of Public Housing Modernization, 24 C.F.R. § 968.108(c) requires Public Housing Authorities to pay "relocation assistance at the levels described in, and in accordance with the requirements of, the Uniform Relocation Assistance and Real property Acquisition Policies Act of 1970."

## FACTUAL ALLEGATIONS

18. All of the plaintiffs have been required by defendants to relocate from their apartments in conventional public housing projects in New Orleans due to the revitalization, modernization and/or redevelopment efforts which have been undertaken by HANO with federal financial assistance. The federal grants for these projects include budgeted amounts to assist residents with

temporary and/or permanent relocation.  As a condition of the receipt funds for the demolition of

existing housing units necessary for the revitalization, modernization and/or redevelopment efforts,

HANO also agreed with the United States Department of Housing and Urban Development to meet

the requirements of the URA.

19.  In order to effectuate said forced relocation, defendant HANO provided the plaintiffs

named in Categories A, B and C, below, with section 8 subsidized housing program vouchers and

all of these plaintiffs found Section 8 subsidized apartments which accepted them as tenants.  Section

8 voucher-holders are entitled to utility allowances based upon "normal patterns of consumption for

the community as a whole and current utility rates," 24 C.F.R  § 982.517, which is a different

standard than that set by the URA.  Plaintiffs in Category D were relocated to scattered site housing

owned and operated by HANO, where they received and are receiving utility allowances which are

differently computed than Section 8 voucher housing utility allowances, but also are less than their

estimated actual utility expenses. Plaintiffs in Category E relocated to private housing, either directly

from one of the named developments or following a period of participation in the Section 8 voucher

program and, with the exception of plaintiff Barbara Jackson, received neither utility allowances nor

payments toward their rent or ownership costs for the period of time in private housing.

### CATEGORY A PLAINTIFFS
**Persons who have received some but not all of the payments
to which they are entitled under the Uniform Relocation Act.**

20.  Pursuant to a settlement agreement resolving (without admission of liability) the case

of *Desire Area Resident Council et al. v. HANO et al.,* District Court Case No. 01-1458 (E.D.La.),

the following plaintiffs have each received from HANO individually calculated payments for their

increased monthly utility costs resulting from their forced relocation from HANO under the Uniform

Relocation Act for the period of time between the date of their involuntary displacement and December 31, 2002: Sabrina Ackers, Sherrill Acklin, Tanita Akmin, Cindy Mae Alexander, Keyon Alexander, Mary Anderson, Nicole Arnold, Carolyn Atkins, Georgia Badon, Lealer Faulk Badon, Nathalie Baldwin, Lenora Bankston, Janice Bell, Gwendolyn Bannister, Yoland Barra, Elizabeth J. Batiste, Leona Battie, Leroy Beasley, Willie Mae Blatcher, Juanita L. Boudreaux, Nicole Braud, Sidrikia Bridgewater, Veronica Brimmer, Emma Leavy Brown, Hattie Brown, Tonya Brown, Tiffani Brumfield, Collette Chartian, Cynthia Clark, Sylvia Corner, Helen Coleman, Delores Curtis, Shirley Cyprian, Theda Daniel, Sheryl Davis, Tisha Delmore, Raquel M. Diaz, Gladys C. Dorest, Harriet Kate Duncan, Clara Duplessis, Barbara J. Everage, Renard Flagge, Barbara Foster, Cynthia M. Gillum, Latissa Glover, Treneen Gordon, Mary Gross, Leola Alexander Hall, Janice Hamilton, Raynell Harper, Katie Harris, Trenell Harris, Barbara Ann Hayner, Esther Haynes, Penny Taylor Henry, Doris Williams Horne, Charmine Houston, Carol A. Howard, Rosalene Isaac, Barbara Jackson, Barbara L. Jackson, Leola Sanders Jackson, Mildred Jackson, Trina Jackson, Pamela Jefferson, Chelsey Johnson, Evelyn Jenkins Johnson, James Johnson, Shannon M. Johnson, Trina Jackson, Erica Jolly, Letitia C. Jolly, Loletha M. Jones, Nicole Jones, Octavia Christy Jones, Oz Jones, Marion Jordan, Melba Badon Keith, Amy King, Sonya C. Knight, Marilyn LaCour, Eniel Larks, Joycelyn Lavigne, Gwendolyn E. Layman, Troylynn Lawrence, Lubertha Lee, Sandra Lee, Florida Marie Leggins, Barbara Leonard, Elaine Letterman, Everlena Lewis, Mary Ann Lewis, Dwayne Lewis, April Mack, Annie J. Magee, Jacqueline Marshall, Jacqueline Ann Marshall, Clarice Martin, Quwanda Martin[1], Kathleen McCaskill, Hope McElveen, Betty McElveen Michelle

---

[1]Quwanda Martin's family would have received payment in this category but for her mother's death. She is named as a surviving tenant entitled to payments under the URA.

10

Manning, Jacqueline Marshall, Barbara Martin, Lonnie McBride, Faye McMillian, Andre Mims, Glorideen Miller, Joan Mitchell, Germaine Monroe, Schwanna Morris, Carla Nelson, Yvette Neveaux, Norena Newsome, Evella Pierre, Lenora Polk, Joann Alexis Pugh, Donshala Quinn, Katherine Raymond, Irma Ricardo, Pauline Richard, Estella Richardson, Valerie Riles, Tammy Riley, Barbara Taylor Robertson, Rosalie Robinson, Thelma Robinson, Shelita Rodriguez, Delores Rolland, Glenda Rowell, Jessie Burns Scott, Cicily Segura Debra Simon, Charlene Smith, Debra E. Smith, Debra Marie Smith, Florine Smith, Jacqueline Smith, Leotha Smith Shelanda Smith, Virginia Smith, Cynthia Solomon, Patricia Sorina, Devonzel Sterling, Briggie Stewart, Carol Sims Stewart, Mary Stewart, Viola Stewart, Alicia Sylvester, Catherine Taylor, Janita Taylor, Vanessa Thedford, Delores Thomas, Clothilde Tillie, Berleather Toler. Tanika Turner, Katrina Tyler, Valerie Vanorman, Michelle Ventry, Latangel Viltz, Wendy Wallace, Zetroia Ward, Agnes Washington, Deotis Washington, Yvette Washington, Barbara Waters, Melvaline Waters, Rosalind Watts, Deshanna Weaver, Patricia Weaver, Elaine West, Estelle Wharton, Annie White, Gloria White, Bessie Williams, Cynthia Williams, Cyntrell D. Williams, Glen Marie Williams, Idelle Williams, Mary Williams, Ruth Barnes Wilson, Verna Williams, Patricia Young, Robin Young, Sondeltia Young, Shirley Young and Theresa Young.  This period of time and the payments made by HANO for such period are not at issue in the within litigation.  HANO, however, has refused to make any such payments for the period of time subsequent to December 31, 2002 even though the named tenants have not each received the full 42 months of payments provided for under the Uniform Relocation Act.  Jacqueline Bentley Lott, Marian Hagans, and Debra Williams Moses also moved to section 8 voucher housing in Orleans Parish and were entitled to receive from defendant HANO compensation due them under the aforesaid settlement agreement and the Uniform Relocation Act for increased

11

housing costs. In violation of said agreement and Act, HANO has failed to make any payments to them because they paid only for electricity, while their landlord paid for heating.

21. The estimated average utility costs for each tenant in this group for calendar year 2003 are higher than those for 2002 because there have been large increases in natural gas and electricity prices, and heating degree days increased in 2003 as well. HANO has admitted that its utility allowances for 2002 were less than the estimated average utility costs for 2002, let alone for 2003, with the exception of one and five bedroom all-electric apartments. HANO's section 8 utility allowances for January through at least September, 2003, have nevertheless been the same as those used in 2002. Effective October 1, 2003, HANO increased the utility allowances under the Section 8 voucher program, but only for section 8 tenants signing new contracts or being re-certified for Section 8 participation.

22. Each plaintiff in this group of tenants is entitled to compensation for the difference between his or her estimated average utility costs for her particular apartment size and heating/cooling type and HANO's section 8 utility allowance for this size apartment and heating/cooling type, for the balance of time remaining on his or her 42 month entitlement period.

23. If plaintiffs had not been forced to relocate, they would have been paying a maximum of 30% of their income for rent and utilities in conventional public housing. Therefore, in addition to the compensation for utility costs requested above, those plaintiffs in this group who have been or are now paying more than 30% of their income as rent are entitled to compensation for this increase in housing costs, also for up to a total of 42 months, but subject to the statutorily-mandated maximum of $5,250 unless such housing was "Last Resort Housing."

12

## CATEGORY B PLAINTIFFS
### Persons who used a Section 8 voucher to move outside Orleans Parish

24. The following plaintiffs are former tenants of one of the Developments referenced above who moved to Section 8 housing located outside Orleans Parish either directly after being involuntarily displaced or following a period of tenancy in Orleans Parish: Felicia Badon, Mona Blunte, Dianne Carter, Karrie Curtis, Geraldine Dixon, Charlene Green, Jynika Jacques, Catrice Johnson, Gaynell Jones (remaining tenant family member of Flora Mae Ventry), Judy Jones, Delores Thomas Matthews, Jovonda Morgan, Shawanda Renfroe, Regina Singleton, Dorothy Valry Singleton, Kawanda Turner, Wendy Wallace, Audrey Walton, Cynthia Winn, Emelda Woods and Theresa Young. These plaintiffs have not received from defendant HANO any assistance under the Uniform Relocation Act toward their increased monthly utility costs resulting from their forced relocation. Instead, they have just received from the public housing authority in the jurisdiction to which they relocated the same utility allowances as other Section 8 tenant in such jurisdiction. Such allowances are based on "normal patterns of consumption for the community as a whole and current utility rates," 24 C.F.R. § 982.517, for apartments of comparable size and appliances, but on information and belief are less than the accurately estimated average monthly utility costs for these plaintiffs' particular replacement dwellings. The latter is the standard set by the Uniform Relocation Act and regulations. *See* 49 C.F.R. § 24.2, comparable replacement dwelling...(8)(ii), quoted above, and HUD's Guidance on the Application of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA)(Directive No. 1378).

25. HANO has not compensated tenants in this group who are paying more than 30% of their income toward their rent.

13

26. Since moving to a Section 8 apartment outside Orleans Parish, the "monthly rent and estimated average monthly utility costs for the replacement dwelling" (49 C.F.R. § 24.2(8)(ii)) of these plaintiffs have exceeded their "base monthly rental for the displacement dwelling" (49 C.F.R. § 24.402(b)(2)). Their actual monthly rent and utility payments have also been greater than the base monthly rental and utility payments for their displacement dwellings.

**CATEGORY C PLAINTIFFS**
**Persons who moved from the Fischer Housing Development**

27. Plaintiffs Dione Davis, Tanya Glover, Tasha Landry, Antoinette Williams, and Dorothy Wright are tenants who received Section 8 housing vouchers when they were involuntarily relocated from the Fischer Housing Development. They have received no relocation payments from HANO whatsoever.

28. Each plaintiff in this group of tenants is entitled to compensation for the difference between his or her estimated average utility costs for his or her particular apartment size and heating/cooling type and HANO's section 8 utility allowance for this size apartment and heating/cooling type, for a maximum of 42 months.

29. If plaintiffs had not been forced to relocate, they would have been paying a maximum of 30% of their income for rent and utilities in conventional public housing. Therefore, in addition to compensation for increased utility costs as requested above, those plaintiffs in this group who have been or are now paying more than 30% of their income as rent are entitled to compensation for this increase in housing costs, also for a maximum of 42 months and a total maximum of $5,250.

**CATEGORY D PLAINTIFFS**
**Persons who moved to scattered site housing**

30. Upon being involuntarily displaced from one of the above-referenced developments, the

14

following plaintiffs relocated to scattered site housing owned and operated by HANO: Gaynell Adams, Lynette Carter Byrd, Trenell Christmas, Patricia Cook, Marlene Demourelle, Zequilla Dunn, Jennette Dunn, Cynthia Floyd, Jemelle Forcel, Emelda Green, Mary Green, Pinkey Guy, Christine Johnson, Angelina Johnson, Evelyn Kelly Jones, Catherine Magee, Linda Moliere, Cynthia Morris, Theresa Morris, Jean Mutin, Dorothy Peterson, Trane Powell, Patricia Price, Debra Railey, Byron Red, Dorothy Richardson, Brenda Scio, Arnold Seymour, Jr. (remaining tenant family member of Brenda Seymour), Zinnitra Stevenson, Ella Tobias, Nella Weary, and Yvonne White. Their rent at such housing has been and currently is set at 30% of their adjusted income, the same as it would have been had they not been involuntarily relocated. Their utility costs, however, have increased from what they would have been had they not been involuntarily relocated.

31. As a result of the above-referenced settlement in *Desire Area Resident Council et al. v. HANO et al.,* U.S. District Court Case No. 01-1458 (E.D. La.), supra, HANO has agreed to compensate these tenants for their increased utility costs through December 31, 2002, and this period of time is not at issue in the within litigation.

32. HANO has, however, refused to make any such payments to these tenants for the period of time subsequent to December 31, 2002 (just as it has for Category A tenants), even though these tenants have not each received the full 42 months of payments provided for under the Uniform Relocation Act.

33. The estimated average utility costs for each tenant in this group for calendar year 2003 are higher than those for 2002 because there have been large increases in natural gas and electricity prices, and heating degree days increased in 2003 as well. HANO's scattered site utility allowances for 2003, however, have been the same as those used in 2002, and are not being increased for 2004.

15

34.  Each plaintiff in this group of tenants is entitled to compensation for the difference between his or her estimated average utility costs for his or her particular apartment size and heating/cooling type and HANO's scattered site utility allowance for this size apartment and heating/cooling type, for the balance of time remaining on his or her 42 month entitlement period.

### CATEGORY E PLAINTIFFS
### Persons who moved to private housing

35.  The following plaintiffs are former tenants of one of the above-referenced developments who, upon being involuntarily displaced, moved to private housing either directly from a covered development or following a period as a Section 8 voucher tenant or scattered site tenant: Gaynell Adams, Dorothy Beal, Barbara Bell, Viola Corey, Shawinda Cowart, Felicia Jackson, Crystal Jordan, Nadine Martin, Jacqueline Montana, Jessie Scott, Cynthia Smith, Donna Smith Rubbie Sullivan, Kwanda Turner, Daynel Ward and Ophelia Warrick.  Plaintiff, Barbara Jackson also moved to private housing and has not received compensation due her under the Uniform Relocation Act for her utility costs while in private housing.

36.  Each plaintiff in this group of tenants is entitled to up to $125 per month as compensation for his or her estimated average utility costs for his or her particular dwelling, for up to a total of 42 months, or in the alternative, for former tenants who purchased a home, to a lump sum payment.

37.  In addition, to compensation for increased utility costs, those plaintiffs in this group who have been or are now paying more than 30% of their income as rent or mortgage payments and who have not received any payments from defendant HANO for such rent or mortgage payments are entitled to compensation for this increase in housing costs, also for a maximum of 42 months.

16

38. Plaintiffs have a substantial federal statutory right to a replacement dwelling which is "within his or her financial means;" i.e., the "monthly rent and estimated average utility payments for the replacement dwelling" should not exceed the "base monthly rental for the displacement dwelling." 49 C.F.R. § 24.2 (Comparable replacement dwelling...(8)(ii)).

## AS TO ALL PLAINTIFFS

39. Defendants have failed to estimate the anticipated average monthly utility payments at the replacement dwellings of each individual plaintiff, as required by the URA, and have failed to notify plaintiffs of their rights under the Uniform Relocation Act, including but not limited to the right to estimated average utility payments for up to 42 months, the right under 42 U.S.C § 4624(b) to elect to apply uniform relocation act payment to a down payment on, and other incidental expenses for, the purchase of a decent, safe and sanitary replacement dwelling, and the right to reasonable assistance necessary to complete and file any required claim for payment, as well as the procedures for appealing an adverse determination.

40. Defendants HANO and Lamberg have deprived and are threatening to continue to deprive Plaintiffs of their substantial federal rights under color of state law.

## FIRST CAUSE OF ACTION

41. Plaintiffs restate and incorporate by reference the foregoing allegations of this Complaint is if full rewritten herein.

42. The inadequate payments provided by defendant violate 42 U.S.C § 4624 and 24 C.F.R. § 24.2 in that they render the replacement housing of plaintiffs beyond their financial mean and not "comparable replacement dwelling(s)."

43. Plaintiffs have a private right of action under the Uniform Relocation Act to challenge

defendants' illegal failure to make payments and a private right of action under U.S.C. § 1983 for deprivation of substantial federal rights under color of state law.

44. As a direct and proximate result of defendants' violation of the Uniform Relocation Act, 42 U.S.C. § 4601 et seq. and the United States Housing Act of 1937, 42 U.S.C. § 1437 et. seq., plaintiffs have suffered loss of payments to which they are entitled, and some of the plaintiffs will suffer additional loss of payments in the future.

## SECOND CAUSE OF ACTION

45. Plaintiffs restate and incorporate by reference the foregoing allegations of this Complaint as if fully rewritten herein.

46. The actions and inactions of defendants outlined above constitute a violation of the Due Process guarantee of the U.S. Constitution in that defendants have deprived plaintiffs of their federally guaranteed property interest in adequate rent and utility payments without proper notice and an opportunity to be heard. The Due Process Clause of the Fourteenth Amendment to the United States Constitution is enforceable under 42 U.S.C . § 1983.

47. As a direct and proximate result of defendants' violation of Due Process, plaintiffs have suffered loss of payments to which they are entitled, and some of the plaintiffs will suffer additional loss of payments in the future.

## THIRD CAUSE OF ACTION

48. Plaintiffs restate and incorporate by reference the foregoing allegations of this Complaint as if fully rewritten herein.

49. Plaintiffs are the intended third party beneficiaries of HANO's contractual agreements with HUD to abide by the requirements of the Uniform Relocation Act.

18

50. As a direct and proximate result of defendants' violation of its agreements with HUD, plaintiffs have suffered loss of payments to which they are entitled, and some of the plaintiffs will suffer additional loss of payments in the future.

### FOURTH CAUSE OF ACTION

51. Plaintiffs restate and incorporate by reference the foregoing allegations of this Complaint as if fully rewritten herein.

52. If HANO's records disclose that any of the plaintiffs were temporarily relocated, then HANO is in violation of 24 CFR 970.5(f) and its own policies in that it has not paid such tenants their actual costs, including utility bills.

53. As a direct and proximate result of defendants' violation of 24 CFR 970.5(f) and its own policies, these plaintiffs have suffered loss of payments to which they are entitled, and some of these plaintiffs will suffer additional loss of payments in the future.

### FIFTH CAUSE OF ACTION

54. HANO failed to comply with two federal regulations which require displacing agencies to provide certain notices and assistance to persons scheduled to be displaced. It failed to follow the mandate of 49 C.F.R. § 24.207(a), which states that a "displaced person must be provided reasonable assistance necessary to complete and file any required claim for payment," and it failed to notify tenants promptly when their claims were implicitly and explicitly disapproved, including in such notice "the procedures for appealing that determination." 49 C.F.R. § 207(g).

### PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

1. That this Court assume jurisdiction of this case.

19

2. That this Court issue a judgment declaring that defendants have illegally failed to estimate anticipated average utility costs for the individual replacement dwellings of permanently displaced tenants and to make payments to such tenants of cover their increased utility and/or rental costs at their replacement dwellings.

3. That the Court award permanently displaced plaintiffs equitable restitution equal to the difference between the estimated average monthly utility costs for their replacement dwellings and the utility payments, if any, that have received from any public housing authority to the date of Judgment, plus increased rental costs, if any, of such plaintiffs, with interest from the date of judicial demand, and further issue preliminary and permanent injunctive relief ordering defendants to determine such estimated average monthly utility costs for their replacement dwellings and to make such payments hereinafter, for a maximum 42 months total coverage.

4. That the Court order HANO to reinstate to the Section 8 program all plaintiffs who have been terminated from that program as a result of their inability to pay utility costs following their forced displacement from public housing.

5. That this Court issue preliminary and permanent injunctive relief ordering defendants to pay the actual housing costs at the replacement dwellings of the plaintiffs who were or are temporarily displaced.

7. That the Court award plaintiffs costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988.[2]

8. For such further relief as the Court may deem just and proper.

---

[2]At the current time, New Orleans Legal Assistance is prohibited from collecting attorney fees by federal law governing organizations funded by the Legal Services Corp.

20

Respectfully submitted,

Charles M. Delbaum (T.A.), LSBA No. 22035
Laura A. Tuggle, LSBA No.22171
NEW ORLEANS LEGAL ASSISTANCE
1010 Common Street, Suite 1400 A
New Orleans, Louisiana  70112
Telephone: (504) 529-1000

Attorneys for plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on counsel for all parties by depositing same in the U.S. mails, first class postage prepaid, properly addressed, this 2 day of _____, 2004.

21